## Daniel McMahon *et al.*

*v.*

## Rose Ann Sankey.

*Filed at Ottawa June 12, 1890.*

1. INTOXICATING LIQUORS—*injury to means of support—as to elements affecting the right of recovery.* In an action by a widow, against a dram-shop keeper and his lessor, to recover for an injury to her means of support, it is error for the court to so instruct the jury as to make the right of recovery depend upon the question whether the plaintiff has been injured in her means of support "by the sale or gift of intoxicating liquor" to her husband. Intoxication produced by the liquor sold or given, and not the mere *gift or sale* of the liquor, must be the cause of injury to the means of support.

2. In such an action, it is necessary for the plaintiff to show the sale or gift of intoxicating liquor to the deceased, and also to show intoxication resulting from the liquor so sold or given, and injury resulting from such intoxication.

3. A husband is under a legal obligation to support his wife, and this right of support is not limited to supplying the bare necessaries of life, but includes comforts, and whatever is suitable to the wife's situation and the husband's condition in life. Whatever lessens or destroys her husband's ability to supply her with suitable comforts, to that extent injures her means of support, even though she is not thereby deprived of the actual necessaries of life.

4. The Dram-shop act was not intended to enable the affluent, or those well provided for, to sue and recover simply because the husband and father may become intoxicated, and while in that condition may lose time, neglect his business, and so become possessed of smaller means than he already had, but it was designed to protect the family of the drunkard against immediate and probable want of adequate support.

5. In order to maintain her action, under the statute, for injury to her means of support, it is by no means necessary for the wife to show that she has actually been without support, or been at any time, in whole or in part, deprived of the means of support. Means of support relate to the future as well as the present. It is enough that she show that the means of her future support have been cut off or diminished below what is reasonable and competent for a person in her situation in life, and below what they otherwise would have been.

6. SAME—*injury to means of support—measure of damages—exemplary damages.* Where a dram-shop keeper continues to sell intoxicating liquors to a man in the habit of drinking to excess, in wanton disregard or defiance of the request and warning of the wife of the latter, in consequence of which the husband becomes intoxicated, and the wife is thereby actually injured in her means of support, the jury may, in an action by the wife, give her exemplary damages.

7. SAME—*other means of support—as affecting the measure of recovery.* On the trial of an action by a widow, against a dram-shop keeper, to recover for an injury to her means of support caused by the intoxication and death of her husband, the court modified one of defendant's instructions by striking out these words: "And the jury are further instructed, that in considering the question of damages to plaintiff's means of support they should take into consideration any evidence, if any there be in the case, showing or tending to show that she was not entirely dependent on her husband for support." The only proof as to other means of support was that plaintiff and her deceased husband had four children, aged eleven, thirteen, sixteen and seventeen years, and that they sometimes gave their mother some of their wages: *Held,* that there was no error in the modification of the instruction.

8. It has been held, the fact that a wife may have an income from a source other than her husband, will not affect her right to recover damages, under the Dram-shop act, for an injury to her means of support from her husband by reason of intoxication, from the sale or gift of intoxicating liquors. She may still recover for the loss of the support she was entitled to receive from her husband.

9. INSTRUCTIONS—*stating all the elements of the cause of action.* An instruction which merely attempts to state the measure of damages in case of a recovery, is not required to recapitulate all the different elements constituting a cause of action which have been fully set forth in other instructions.

10. It is not objectionable, when the plaintiff's counsel desires an instruction as to the rule of damages, to say to the jury, that if they find, from the evidence, that the defendant is guilty as charged in the declaration, then the plaintiff is entitled to recover, and define the measure of damages. Such a mode obviates the necessity of stating, and perhaps of reiterating, hypothetically, each element of the cause of action before coming to the real point of the instruction.

11. SAME—*stating particulars—as, in case of personal injury.* In an action by a widow, against a dram-shop keeper, to recover for an injury to her means of support from the intoxication of her husband, the jury were told, by an instruction, that if they should believe, from the evidence, that on, etc., plaintiff's husband "was injured by a street car," and afterward died in consequence of such injury, and that he was so

injured by reason of intoxication produced, in whole or in part, by intoxicating liquor sold or given to him by the defendant or his agent, etc. The declaration alleged that the deceased fell from a street car in consequence of his intoxication, and "did have one of his legs run over and broken and crushed by the wheel of the said street car:" *Held,* that the instruction was not erroneous in omitting to call the attention of the jury to the particular manner in which the injury occurred.

12. Same—*repeating a proposition.* Where it is announced in an instruction that the proof of actual damages is necessary to authorize the allowance of exemplary damages, it will not be necessary to call the attention of the jury to the same principle in other instructions.

13. Parent and child—*earnings of minor children.* The father is entitled to the earnings and wages of his minor children, and not the mother.

14. Practice—*submitting questions for special findings—at what stage of the trial.* The statute requires that questions of fact upon which the jury may be required to make special findings, "shall be submitted by the party requesting the same to the adverse party before the commencement of the argument to the jury." This requirement is the same whether the opening and closing arguments for the plaintiff are made by the same or by different counsel.

Appeal from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. Julius S. Grinnell, Judge, presiding.

Mr. Matthew P. Brady, for the appellants:

The averment that Sankey fell off the car and was run over by the car wheel was material, and necessary to be proved as alleged. 1 Chitty's Pl. (16th Am. ed.) 407; *Wright* v. *Railway Co.* 27 Bradw. 200; *Bloomington* v. *Goodrich,* 88 Ill. 558; *Railway Co.* v. *Foss,* id. 551; *Ayers* v. *Chicago,* 111 id. 406; *Gavin* v. *Chicago,* 97 id. 66; *Gridley* v. *Bloomington,* 68 id. 47; *Railway Co.* v. *Shacklet,* 105 id. 364.

The first of plaintiff's instructions was palpably erroneous, in making the defendant liable for the mere sale or gift of intoxicating liquor to Sankey, without regard to his intoxication. *Flynn* v. *Fogarty,* 106 Ill. 263; *Freese* v. *Tripp,* 70 id. 496; *Kadgin* v. *Miller,* 13 Bradw. 474; *Kellerman* v. *Arnold,* 71 Ill. 632; *Meidel* v. *Anthis,* id. 241; *Albrecht* v. *Walker,* 73 id. 69;

*Confrey* v. *Stark,* id. 187; *Brantigam* v. *While,* id. 561; *Brannon* v. *Silvernail,* 81 id. 434.

Although the law may have been correctly stated in the instructions given on behalf of defendants, (appellants here,) the error in this instruction was not thereby cured. *Quinn* v. *Donovan,* 85 Ill. 194; *Linen Co.* v. *Hough,* 91 id. 63; *Railway Co.* v. *Henks,* id. 407·; *Railroad Co.* v. *Murray,* 62 id. 326; *Steinmeyer* v. *People,* 95 id. 386.

The court should have confined the right of recovery to the injury stated in the declaration. *Manufacturing Co.* v. *Ballou,* 71 Ill. 417; *Railroad Co.* v. *Rockafellow,* 17 id. 541; *Railway Co.* v. *Morgan,* 72 id. 155; *Railroad Co.* v. *Mock,* id. 141.

Without proof of actual damages the plaintiff could not recover exemplary damages. *Confrey* v. *Stark,* 73 Ill. 187; *Freese* v. *Tripp,* 70 id. 501.

The court erred in refusing to give defendants' sixth instruction as asked, and in modifying the same, and also in refusing to submit to the jury appellants' request for special findings on certain material questions of fact.

Mr. S. K. Dow, Mr. Thomas M. Thompson, and Mr. Elmer E. Beach, for the appellee:

In regard to the instruction called No. 1 in appellants' brief, (which instruction was really last in order, and was so given by the judge,) it is simply an instruction as to exemplary damages. As an instruction for this purpose, it is not requisite or customary to repeat what is necessary for the recovery of actual damages. Such an instruction on behalf of plaintiff is as if it were the last round of a ladder, not to be stepped upon or reached until all the steps in the proof necessary to entitle the plaintiff to recover have been taken. As to the proper form of such instruction we cite *Railroad Co.* v. *Payne,* 59 Ill. 534; *Railroad Co.* v. *Dowd,* 115 id. 659; 119 id. 399.

Counsel also noticed the several other points made by the appellants, and reviewed the facts to some extent.

Mr. Justice Magruder delivered the opinion of the Court:

This is an action of trespass on the case, begun by the appellee against the appellants in the Circuit Court of Cook County on May 11, 1888, under the ninth section of the Dram Shop Act, (Rev. Stat. chap. 43, Starr & C. Ann. Stat. page 971), to recover damages for injury to her in her means of support by reason of the intoxication and death of her husband caused by the sale to him of intoxicating liquor by the appellant McMahon, who kept a saloon on premises owned by the appellant Powers. The verdict and judgment in the trial Court were in favor of the plaintiff, which judgment has been affirmed by the Appellate Court, and is brought before us for review from the latter Court by appeal.

The trial court gave the following instruction for the plaintiff:

"The court instructs the jury, that if they believe, from the evidence, that the plaintiff has been injured in her means of support by the sale or gift of intoxicating liquor to said John Sankey by said Daniel McMahon, during the time charged in the declaration, and if the jury further believe that the conduct of said McMahon in this regard was wanton and in wilful disregard of plaintiff's rights, then the jury may give, in addition to the actual damage to her means of support which the jury may believe, from the evidence, under the instructions of the court, plaintiff had sustained, such further sum as in their sound discretion the jury may believe will be an example to deter others in like circumstances."

The objection is made to this instruction, that it authorizes the jury to give damages in case the plaintiff was injured in her means of support by the sale or gift of intoxicating liquor to her husband, John Sankey, whereas it was necessary for the jury to find that the injury was caused by the intoxication of John Sankey, and that such intoxication was produced by the liquor sold or given to him by McMahon. The instruction is undoubtedly erroneous in the respect here indicated, and,

if it stood alone, its erroneous character might require a reversal.   As a matter of course, *intoxication* produced by the liquor sold or given, and not the mere *gift* or *sale* of the liquor, must be the cause of injury to the means of support.

But we think that the instruction was cured by other instructions which were given to the jury.   The second and third instructions given for the plaintiff, and the first, second, third, fourth and fifth instructions given for the defendants, expressly and explicitly told the jury, that the injury must have been caused by intoxication produced by liquor sold to the deceased by McMahon.   For instance, the fourth instruction given for the defendants contained these words: "the plaintiff * * * is required by the law to prove  * * *  that defendant McMahon sold to John Sankey intoxicating liquors, and that such liquors caused, in whole or in part, said John Sankey to become intoxicated, and that such intoxication caused said John Sankey's death, and that, by reason of the death of the said John Sankey, the said plaintiff was injured in her means of support."

It cannot be said, that the instruction complained of, and the instructions curative of it, are contradictory.   The latter merely supplement the former by supplying what is omitted from it.   (*Latham* v. *Roach*, 72 Ill. 179).   It was necessary to show the sale or gift of intoxicating liquor to the deceased as stated in the instruction complained of, but it was also necessary to show intoxication resulting from the liquor so sold or given and injury resulting from such intoxication, as stated in the curative instructions.

Moreover, the instruction complained of was one, which merely attempted to state what should be the measure of damages in case of a recovery.   Such an instruction is not required to recapitulate all the different elements constituting a cause of action, which have been fully set forth in the other instructions.   Its design is to inform the jury what damages they shall award, in case they find the plaintiff entitled to re-

cover under the principles announced in the other instructions. (*C. B. & Q. R. R. Co.* v. *Payne, Admr.* 59 Ill. 534; *C. M. & St. P. Ry. Co.* v. *Dowd,* 115 id. 659; *Pennsylvania Co.* v. *Marshall,* 119 id. 399). In *C. B. & Q. R. R. Co.* v. *Payne, Admr. supra,* we said: "It is not an unusual, nor is it an objectionable, practice where the plaintiff's counsel desire an instruction as to the rule of damages, to say to the jury, that, if they find from the evidence that the defendant is guilty as charged in the declaration, then the plaintiff is entitled to recover, and define the measure of damages. Such a mode obviates the necessity of stating, and perhaps of reiterating, hypothetically, each element of the cause of action before coming to the real point of the instruction." In the instruction here complained of, the jury are referred to the "time *charged in the declaration,*" and a reference to the declaration shows that it alleges intoxication as produced by the liquor sold, and injury as resulting from such intoxication.

The instruction complained of is not erroneous in authorizing the jury to give exemplary damages, because the declaration avers and the proof shows, that McMahon sold liquor to Sankey after the plaintiff had several times requested him not to do so. (*Meidel* v. *Anthis,* 71 Ill. 241). The third instruction asked by the defendants and given for them explained to the jury, in substance, what was a "wanton and wilful disregard of plaintiff's rights." It told them that, "to warrant the giving of punitive damages," the plaintiff must have proved by a preponderance of evidence the sale of intoxicating liquor by McMahon to Sankey, the latter's intoxication caused by such liquor, actual damage to plaintiff in her means of support by reason of such intoxication, "and that * * * McMahon maliciously or against the warning or request of the said plaintiff that the said McMahon should not sell intoxicating liquors to the said John Sankey, did sell such liquors to the said John Sankey, by or in consequence of which such intoxication of the said John Sankey was caused in whole or in part." There is

abundance of evidence in the record, which warranted the jury in finding the facts required to be found by this instruction.

Objection is also made to the fifth instruction given for the plaintiff, which told the jury, that there is a legal obligation on the part of the husband to support his wife, and that this right of support is not limited to supplying the bare necessaries of life, but includes comforts and whatever is suitable to the wife's situation, and the husband's condition in life, and that whatever lessens or destroys her husband's ability to supply her with suitable comforts to that extent injures her means of support, even though she is not thereby deprived of the necessaries of life. We see no objection to this instruction, as applied to the facts in this case.

The evidence shows that John Sankey, the deceased husband of the plaintiff, was a tailor by trade, working principally as a repairer and upon special jobs for other tailors, and doing his work for the most part at his own home. About July 14, 1887, he moved from Union St. to 149 North Halsted Street in the city of Chicago, where he took up his abode with his family consisting of his wife and four children. The saloon of McMahon was on the opposite side of the street at No. 150 N. Halsted St. The proof tends to show that he was in the habit of going over to McMahon's saloon, and buying liquor, and becoming intoxicated thereby, during the period of time from July, 1887, to December 25, 1887, on which latter date he received the injuries which resulted in his death on January 12, 1888; that plaintiff requested McMahon not to sell him liquor in September, and in October, and in November, and again on the morning of the day of his death; that, after he began to frequent the saloon of McMahon, he neglected his business and earned less money, his wages theretofore amounting to $15.00 and $18.00 per week, and thereafter to $6.00 and $8.00 per week; that he always handed over what he earned to his wife, and went to the saloon in question for the reason, among other reasons, that he could there purchase liquor on credit.

His wife relied upon his earnings as a means of support. It may be that she could supply herself and family with the bare necessaries of life for $6.00 or $8.00 per week, and that, with $15.00 or $18.00 per week, she could obtain for them a few comforts beyond such necessaries. If by intoxication produced by the liquor sold to her husband by McMahon, she was deprived of the comforts to be had with the larger earnings, she was injured in her means of support even though she could procure the bare necessaries of life with the lesser earnings.

It is true that the dram shop act was not intended to enable the affluent, or those well provided for, to sue and recover simply because the husband and father might become intoxicated, and, while in that condition, lose time, neglect his business, or become injured, or earn less money, or lose it by neglect of business, and so become possessed of smaller means than he already had; it was designed to protect the family of the drunkard against immediate or probable want of adequate support. (*Confrey* v. *Stark*, 73 Ill. 187). But the loss of those comforts, which are suitable to her condition in life, is as much an injury to the wife's means of support as the loss of the necessaries of existence. In *Schneider* v. *Hosier*, 21 Ohio St. 98, the Supreme Court of Ohio, in defining the phrase, "means of support," said: "In its general sense it embraces all those resources from which the *necessaries and comforts* of living are or may be supplied, such as lands, goods, salaries, wages, or other sources of income. In its limited sense, it signifies any resource from which the wants of life may be supplied." In *Mulford* v. *Clewell*, 21 Ohio St. 191, the same Court said: "In order to sustain her action under these statutes for injury to her means of support, it is by no means necessary she (the wife) should show that she has actually been without support, or been, at any time, in whole or in part, deprived of means of support. Means of support relate to the future as well as the present. It is enough that she show that the sources of

her future support have been cut off, or diminished below what is reasonable and competent *for a person in her station in life,* and below what they otherwise would have been." We endorsed and adopted the doctrine of the Ohio cases in *Meidel* v. *Anthis,* 71 Ill. 241. In the latter case it was shown that the husband was a farmer, and it was there held, that, if his *capacity* to cultivate land was sensibly diminished by the act of the defendant, the wife was injured in her means of support. In *Hackett* v. *Smelsley,* 77 Ill. 109, we said: "This right of support is not limited to the supplying of the bare necessaries of life, but embraces comforts, what is suitable to the wife's situation and the husband's condition in life."

By the second instruction given for the plaintiff the jury were told that, if they should believe from the evidence that on December 25, 1887, plaintiff's husband *"was injured by a street car,"* and afterwards died in consequence of such injury, and that he was so injured by reason of intoxication produced in whole or in part by intoxicating liquor sold or given to him by the defendant McMahon or his agents, etc. The first count of the declaration alleges that the deceased fell from a street car in consequence of his intoxication, and "did have one of his legs run over and broken and crushed by the wheel of the said street car." The objection made to the second instruction is, that it did not call the attention of the jury to the particular manner in which the deceased was injured. The objection is wholly without force. If intoxication produced by liquor sold by defendant to the deceased caused an injury to the latter which resulted in his death, it was unnecessary for the instruction to specify the details of the injury.

It is said that the fourth instruction given for the plaintiff did not call the attention of the jury to the question whether or not plaintiff had suffered actual damages. This had already been done in the first instruction which we have commented upon, and was again done in the first and third instructions given for the defendant. It was unnecessary to refer to actual

and exemplary damages in every instruction.   We held in
*Freese* v. *Tripp*, 70 Ill. 496, that, in an action of this kind,
exemplary damages will not be awarded unless there is proof
of actual damages.   The word, "damages," as used in said
fourth instruction was broad enough to cover all the damages
suffered by plaintiff whether actual or exemplary.   In the in-
structions where, upon a given state of facts, the jury were
authorized to assess such damages as plaintiff had sustained
in her means of support, they could not have been misled, when
reading all the instructions together, into awarding exemplary
damages without at the same time finding that there were
actual damages.

The testimony tends to show, that about 9 o'clock on the
evening of December 24, 1887, the deceased went across the
street to McMahon's saloon; that his wife went over at 11
o'clock, and found him intoxicated, and asked him to come
home; that he came home shortly thereafter "very drunk;"
that he went to bed for only half an hour during the night,
but walked the floor until four o'clock in the morning, his wife
staying by him; that at four o'clock on the morning of Decem-
ber 25, he again went over to the saloon and remained an
hour; that he returned to his home still more intoxicated;
that his wife left him under the charge of her two younger
children and went to church, stopping at the saloon on her
way where she asked McMahon: "will you be so kind as not
to give him any drink today;" that, after her return from
church, he again went over to the saloon and brought back
liquor with him; that, at dinner between one and two o'clock,
he could not handle his knife and fork, and "spilled everything
around upon the table;" that after dinner he boarded a Hal-
sted Street car passing in front of his door; that shortly there-
after he either fell or jumped from the front platform of the
car, while it was passing over a viaduct, and his foot, becoming
caught between the platform on the viaduct and the wheel of
the car, was so badly crushed that he died in about two weeks

thereafter at a hospital to which he was taken. The testimony is conclusive that he was intoxicated when he boarded the car and when he was injured. By his death, plaintiff was deprived of her means of support. (*Emory* v. *Addis,* 71 Ill. 273; *Flynn* v. *Fogarty,* 106 id. 263).

Appellants complain that the trial court modified the sixth instruction asked by them by leaving out the following words: "And the jury are further instructed that, in considering the question of damages to plaintiff's means of support, they should take into consideration any evidence, if any there be in the case, showing or tending to show that she was not entirely dependent on said John Sankey for support." The only proof in the record, upon which this instruction can be based, is found in the cross-examination of the plaintiff. She there states that she and her deceased husband had four sons, aged respectively 17, 16, 13 and 11 years, and that these boys worked from time to time as they could get work, but not steadily, the two youngest in stores and shops, and the two oldest with travelling companies of actors; that they gave some of their earnings to their mother; that they were at home idle a greater part of the time, and were taken care of at such times by her and her husband. We do not think that there was any error in refusing to give the foregoing portion of the sixth instruction.

The question to be determined by the jury was whether plaintiff was injured in her means of support by the intoxication of her husband produced by the sale of liquor to him by the defendant McMahon. The determination of this question was in no way dependent upon her receipt of funds from her sons, nor could the amount of damages to her means of support from the intoxication of her husband be affected in any way by the fact that her sons paid her money. Let it be admitted that she derived her means of support from two sources, that is to say, from the earnings of her husband and from the earnings of her sons. If her income from the first source was diminished or cut off by her husband's intoxication, such injury

to her means of support would be exactly the same whether she did or did not continue to draw an income from the second source.    In *Hackett* v. *Smelsley, supra,* the trial court refused an instruction based upon evidence that the wife had sufficient means in her own right to maintain herself as comfortably as she was supported by her husband, and we upheld such refusal, saying:  "Because the wife may be ablebodied and can earn a livelihood, it does not follow that she does not suffer injury in means of support by loss of her legal supporter. Nor does it so follow where she may have independent means. of support of her own."

It is not true, however, that appellee was legally entitled to the earnings of the children; such earnings belonged to their father during his lifetime as they were all minors.  (Shouler's Domestic Relations (4th ed.) sec. 252).

On the trial below three attorneys appeared for the plaintiff. Two of these addressed the court and jury, one making the opening and the other the closing argument.  After the opening argument was begun, counsel for defendants submitted questions for special findings by the jury, but the court refused to require the jury to make special findings in accordance with such requests.    We think the action of the court was proper. The Act of 1887, "in relation to verdicts of juries in civil cases" (Laws of Ill. of 1887, page 251), requires that the questions of fact, upon which the jury may be required to make special findings, "shall be submitted by the party requesting the same to the adverse party before the commencement of the argument to the jury."    The requirement of the statute is the same, whether the opening and closing arguments for the plaintiff are made by the same counsel, or by different counsel.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*