## Armour & Company v. Young.

(Decided February 10, 1931.)

GEORGE R. HERR, MARSHALL DUNCAN and W. F. GRIGSBY for appellant.

POLIN & POLIN for appellee.

Opinion of the Court by Judge Willis—Affirming.

Armour & Co., by a written contract, employed J. W. Russell to conduct its cream station in Springfield, Ky. Russell in turn employed Josie May Young to assist him with the work, and in his absence to carry it on for him. Armour & Co., furnished certain equipment necessary for the use of the station, consisting of a small boiler connected with a heater for the generation of steam for cleaning milk cans, and of certain apparatus for testing cream.

The boiler exploded, and the assistant was severely scalded. She instituted an action against Armour & Co. to recover damages for the injuries, and a judgment was rendered in her favor. Armour & Co. has prosecuted an appeal, insisting that it was entitled to a peremptory instruction, and that the court erred in giving and refusing instructions.

The argument for the peremptory instruction is predicated upon the assertion that Russell was an independent contractor, and upon the assumption that the negligence, if any, that caused the injury to plaintiff, was chargeable to him.

Russell's contract was in writing and authorized him to purchase, handle, care for, and deliver cream according to instructions then or thereafter given. The contract was terminable by either party upon thirty days' notice. The company agreed to keep the equipment in good repair, and to pay Russell a fixed price per pound of butter fat contained in the cream purchased at the station. Russell paid all the other expenses, including rent, fuel, water, lights, and the salary of his assistant. He was allowed to carry on other business at the station, and his helper assisted with that in the same manner she served in buying and handling cream for the appellant.

The district manager of appellant visited the station once or oftener each week, and instructed the assistant to keep the station and the cream cans clean, and inspected her work to see that it confermed to instructions. Her employment was contracted and her work was performed with the knowledge and acquiescence of the appellant.

It is urged that Russell was an independent contractor because his compensation was measured by the quantity of cream purchased, out of the proceeds of which he was compelled to bear the entire expense of the station, and because he was authorized and allowed to employ and discharge his own help and to run the business in his own way. The method of payment is not decisive, and there are other facts to be considered. The company supplied the machinery and equipment, and undertook to maintain it in good order. The nature of the work was unlike that involved where a certain finished product was to result when given plans were executed, but it

contemplated a continuous course of conduct in buying and handling a portable material.

If the injury had been caused by some wrongful act of Russell wholly disconnected from the appliances furnished by the appellant, or by a careless use made of them, the question would be presented in a different aspect. Cf. Borderland Coal Co. v. Burchett, 193 Ky. 602, 237 S. W. 663; Ballard & Ballard Co. v. Lee, 131 Ky. 412, 115 S. W. 732; Hewitt Lumber Co. v. Mills, 193 Ky. 443, 236 S. W. 949; Adams Express Co. v. Schofield, 111 Ky. 832, 64 S. W. 903, 23 Ky. Law Rep. 1120; Williams v. National Cash Register Co., 157 Ky. 836, 164 S. W. 112; Madisonville, H. & E. R. Co. v. Owens, 147 Ky. 1, 143 S. W. 421. But here the injury was caused by the explosion of a steam boiler furnished by the appellant, and the negligence alleged concerned its condition, construction, maintenance, and operation. In such cases, a different rule applies, since the master owes the same duty and degree of care to employees of the contractor rightfully on its premises that he owes to his own servants. 14 R. C. L. sec. 19, p. 81; Chesapeake & O. Ry. Co. v. McCoy (Ky.) 112 S. W. 1105; Standard Oil Co. v. Titus, 187 Ky. 560, 219 S. W. 1077; Lexington & E. R. Co. v. White, 182 Ky. 267, 206 S. W. 467; West Kentucky Coal Co. v. Davis, 138 Ky. 667, 128 S. W. 1074; Yellow Creek Coal Co. v. Lawson, 229 Ky. 245, 16 S. W. (2d) 1043. In a case like this one, however, the rules regulating the liability of a master for the negligent acts of independent contractors are not apposite. The present case is governed by the rule respecting liability to helpers or assistants to servants for injuries inflicted upon them in the course of their employment. Under that rule the conventional relationship of master and servant results when the master consents for the servant to utilize the services of such helpers. The master thus assumes towards the assistants the same duties and degree of care that he owes to servants employed by himself. Thompson on Negligence, sec. 592; Paducah Box & Basket Co. v. Parker, 143 Ky. 609, 136 S. W. 1012, 43 L. R. A. (N. S.) 182; Borderland Coal Co. v. Small, 160 Ky. 738, 170 S. W. 8; Carter Coal Co. v. Howard, 169 Ky. 87, 183 S. W. 244; Messmer v. Bell & Coggeshall, 133 Ky. 19, 117 S. W. 346, 19 Ann. Cas. 1. In the annotation to the report of the Parker case in 43 L. R. A. (N. S.) 182, will be found a full and illuminating explan-

ation of the legal principles to be applied. The cases of Corrigan v. Hunter, 139 Ky 315, 122 S. W. 131, 130 S. W. 798, 43 L. R. A. (N. S.) 188, and Purtell v. P. & R. C. & I. Co., 256 Ill. 110, 99 N. E. 899, 43 L. R. A. (N. S.) 193. Ann. Cas. 1913E, 335, reported and annotated in connection with the report of the Parker case, furnish a convenient and instructive comparison of the rules regulating the entire subject. In the note it is said:

### "LIABILITY OF MASTER FOR INJURY TO EMPLOYER'S ASSISTANT.

"The word 'assistant' in the above title is used in a guarded sense to denominate a class of persons whose status in the law of master and servant is as distinctive as it is hard to describe. Speaking generally, it embraces those persons who, usually for a consideration, are engaged by a servant of his own initiative, and not primarily if at all in behalf of the master,—as distinguished from those persons who are requested or suffered by the servant to lend a hand in some particular operation, in most instances gratuitously, and whom the courts, expressly or in effect and with fair consistency, regard as 'volunteers.' The volunteer is, on occasions, requested or suffered to perform one of the servant's various duties which are 'all in a day's work,' and thus, let it be said, enables the latter to shirk one of the duties for the performance of which he is being paid. The 'assistant' does something additional which facilitates the servant's performance of his duties, as in the case of Purtell v. Philadelphia & R. Coal & I. Co. [256 Ill. 110, 99 N. E. 899, 43 L. R. A. (N. S.)], post, 193 (Ann. Cas. 1913E, 335), or regularly aids the servant in the performance of his duties, as in Paducah Box & Basket Co. v. Parker, in many instances the servant being a 'piece worker,' who employs assistants and pays them. The distinction becomes clear after considering the cases just referred to in juxtaposition to Corrigan v. Hunter [139 Ky. 315, 122 S. W. 131, 130 S. W. 798, 43 L. R. A. (N. S.)], post, 187, to which is appended a note on the liability of the master for injury to a 'volunteer.' "

Cf. Nyback v. Champagne Lumber Co. (C. C. A.) 109 F. 732, and Keen's Adm'r. v. Keystone Crescent Lumber Co., 118 S. W. 355.

It follows that the circuit court did not err in denying the motion for a directed verdict for the defendant.

The defendant offered two instructions designed to have the jury determine the status of Russell under the contract, but what has been said is sufficient to demonstrate that no error was involved in the refusal of those requests. The court gave an instruction directing the jury to find for the defendant if the plaintiff was the employee of Russell and not of Armour & Co. by direct employment or by a duly authorized agent, which was more favorable to appellant than the facts warranted. It failed to take into account and gave no effect to the principles we have considered in disposing of the question of independent contractor urged by appellant.

It is finally insisted that the instruction predicating liability upon a negligent failure to maintain the boiler and appliances in a reasonably safe condition was erroneous. We have seen that the situation existing imposed upon appellant the duty of due care to keep the boiler and appliances in a reasonably safe condition for the use of persons having a duty or right to be about them, and the court correctly submitted that issue to the jury. It is said that the pleadings complained of defective machinery and of negligent operation, but set up no claim of negligent maintenance. It is not material whether the defective condition arose from negligence in the original installation, or from careless maintenance and operation. Cf. Payton's Adm'r v. Childers Electric Co., 228 Ky. 44, 14 S. W. (2d) 208. The wrong, if any, consisted in having the dangerous and defective appliance where it would likely cause injury, and the pleadings were adequate to present the issues submitted to the jury. Kelly & Shields v. Miller, 236 Ky. 698, 33 S. W. (2d) 662. If the boiler was defective when installed, or was negligently permitted to become dangerous from use and operation, the plaintiff's case was made out, since it was the duty of appellant to exercise ordinary care to install and maintain the boiler and appliances in a reasonably safe condition for the use of its servant and his helper.

The judgment is affirmed.